**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-cv-26066-ALTMAN**

**AVIATION TC LTD.**,

*Plaintiff*,

*v.*

**MD TURBINE REPAIRS, INC.**,

*Defendant*.
_______________________________________/

# ORDER DENYING MOTION TO DISMISS

Our Plaintiff, Aviation TC Limited d/b/a/ Asia Aviation ("Asia Aviation"), brings this action against the Defendant, MD Turbines Repairs, Inc. ("MDTR"), for breach of contract and a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). *See generally* Amended Complaint [ECF No. 18]. MDTR has moved to dismiss Asia Aviation's FDUTPA claim because "Asia Aviation has failed to plead the required actual damages element of a FDUPTA claim" and because "the claim is impermissibly based on and duplicative of the breach of contract claim." Motion to Dismiss (the "Motion") [ECF No. 24] at 1. The Motion is fully briefed and ripe for adjudication. *See* Response in Opposition to the Motion (the "Response") [ECF No. 26]; Reply in Support of the Motion (the "Reply") [ECF No. 29]. After careful review, we **DENY** the Motion.

## THE FACTS

Asia Aviation is a Hong Kong company that "offers consulting services to the Asian aviation market, provides extensive pilot training services in Canada, and supplies aircraft parts within the United States." Amended Complaint ¶ 1. MDTR is a Florida-based "turbine engine disassembly, repair, and logistics company." *Id.* ¶ 2. "Asia Aviation contracted with [MDTR] for the repair of two aircraft engines: Engine CFM56-3 [] ('Engine 1') and Engine CFM56-3C1 [] ('Engine 2') (collectively,

the 'Engines')." *Id.* ¶ 9.

## I. Engine 1

On August 24, 2020, MDTR provided Asia Aviation with a document titled "work order: 20-197" for Engine 1 (the "Engine 1 Workscope"), which "set specific repair guidelines, including the repair costs and the criteria to determine the satisfactory performance of Engine 1 after the repair." *Id.* ¶ 10. MDTR represented that it would complete the contemplated repairs to Engine 1 by December 1, 2020. *See ibid.* "Based on the Engine 1 Workscope and the represented December 2020 repair completion date, Asia Aviation engaged [MDTR] to perform the subject repair work on Engine 1 pursuant to the Engine 1 Workscope." *Id.* ¶ 11. The work on Engine 1 fell short of the parties' agreed-upon performance requirements and was subject to several months-long delays. *See id.* ¶¶ 12–14. Ultimately, "Engine 1 required additional repairs and remained unacceptable until April 2022—sixteen months behind schedule." *Id.* ¶ 16 (emphasis removed).

## II. Engine 2

On August 26, 2020, MDTR provided Asia Aviation with a document titled "work order: 20-198" for Engine 2 (the "Engine 2 Workscope"), which "set specific repair guidelines, including the repair costs and the criteria to determine the satisfactory performance of Engine 2 after the repair." *Id.* ¶¶ 17, 20. MDTR provided Asia Aviation with a repair estimate of "$1,266,115.10" and represented that the repairs to Engine 2 would be complete by February 2, 2021. *Id.* ¶¶ 19–20. "Based on the Engine 2 Work Quote and the represented February 2021 repair completion date, Asia Aviation engaged [MDTR] to perform the subject repair work on Engine 2." *Id.* ¶ 21. "However, while [MDTR] had custody over Engine 2 to make the requisite repairs, [it] repeatedly misrepresented the current status and delivery timeline for Engine 2." *Id.* ¶ 23. "For example, in November 2021, [MDTR] misrepresented to Asia Aviation that [it] shipped Engine 2 to Kalitta Air in Ypsilanti, Michigan for an engine run, when in reality, Engine 2 remained unrepaired in [MDTR's] facility." *Id.* ¶ 24. Asia Aviation

also tells us that, when it visited MDTR's facility, "Asia Aviation's representative saw an entire crew 'working' on Engine 2," that members of this crew represented that MDTR "had all parts necessary to repair Engine 2," and that "Engine 2 would be ready within a few days." *Id.* ¶ 27. Despite these assurances, "Asia Aviation later received two invoices from [MDTR] for Engine 2 revealing that many of Engine 2's parts were ordered after this June 2023 site visit." *Id.* ¶ 29 (emphasis removed).

Asia Aviation also discovered that MDTR had performed "unnecessary work on Engine 2 at an increased cost for Asia Aviation." *Id.* ¶ 30 (emphasis removed); *see also ibid.* ("[MDTR] conducted a Designated Engineering Representative repair/overhaul ('DER') on Engine 2's Low Pressure Turbine Nozzle Guide Vane [ ] without Asia Aviation's knowledge, or much less authorization. A DER repair is different from an Original Equipment Manufacturer repair because it involves a custom developed repair process in which damaged parts are restored back to airworthiness status. Asia Aviation does not accept DER repairs—a fact well known by [MDTR]."). In all, MDTR's conduct resulted in "an increase of over $1 million from the original and only quote Asia Aviation signed in September 2020." *Id.* ¶ 33 (emphasis removed). MDTR "did not disclose any of the significant cost increases until its December 2023 quote, after it completed the repairs on Engine 2 which denied Asia Aviation the opportunity to dispute these additional costs[.]" *Id.* ¶ 38.

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Megladon, Inc. v. Vill. of Pinecrest*, 661 F. Supp. 3d 1214, 1221 (S.D. Fla. 2023) (Altman, J.) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but legal conclusions without

adequate factual support are entitled to no assumption of truth." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (cleaned up).

## ANALYSIS

"To prevail on a FDUTPA claim, a plaintiff must show (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages." *ZAGG Inc. v. Ichilevici*, 2026 WL 63142, at *14 (S.D. Fla. Jan. 8, 2026) (Altman, J.) (cleaned up). "A deceptive act or practice is one that is likely to mislead consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Ibid.* (cleaned up).

MDTR urges us to dismiss Asia Aviation's FDUTPA claim for two reasons: (1) Asia Aviation hasn't pleaded "actual damages"; and (2) Asia Aviation's FDUTPA claim is "duplicative of [its] breach of contract claim." Motion at 2. Neither argument is persuasive.

### I. Actual Damages

*First*, MDTR claims that Asia Aviation has failed to plead "actual damages" because "it has failed to plead that that value of the engine[s] [were] diminished as a result of MDTR's repairs." Motion at 4 (citations omitted). "Actual damages under FDUTPA are measured according to the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1098 (11th Cir. 2021) (cleaned up).

Here, Asia Aviation contracted with MDTR for specific repairs (delineated in the Engine 2 Workscope) that were to be completed by February 2, 2021, at a quoted price of $1,266,115.10. *See* Amended Complaint ¶ 33.[1] The services MDTR rendered differ from what the parties contracted for.

[1] Asia Aviation doesn't allege any specific damages, such as increased costs, arising from MDTR's repair of Engine 1, asserting only that Engine 1's repairs ran "sixteen months behind schedule." Amended Complaint ¶ 16. But this delay, without more, isn't sufficient to state a claim for actual damages under FDUTPA. *See Hetrick v. Ideal Image Dev. Corp.*, 372 F. App'x 985, 991 (11th Cir. 2010)

Instead of limiting the repairs to those outlined in the Engine 2 Workscope, MDTR performed an unnecessary DER repair "at an increased cost for Asia Aviation." *Id.* ¶ 30. And rather than adhere to the parties' agreed-on timeline, MDTR delayed purchasing certain critical parts, resulting in dramatic repair cost increases. *See id.* ¶ 34 (detailing part-specific cost increases caused by MDTR's dilatory conduct). Critically, because the cost increases were caused by an "unacceptable" additional repair and the delayed purchase of relevant parts, the cost overages didn't increase the value of Engine 2. Instead, Asia Aviation was simply asked to pay more for untimely repairs the parties had agreed should cost $1,266,115.10. That gap in the market value of the service delivered (repairs for $2,324,520.46) and the value of services contracted for (the same repairs for $1,266,115.10) are Asia Aviation's actual damages.

MDTR insists that Asia Aviation hasn't pled actual damages because "the engines [weren't] rendered valueless" and because Asia Aviation hasn't plead "that MDTR charged it for services that MDTR never performed." Reply at 2, 3. But these aren't the only circumstances in which a purchaser can suffer actual damages under FDUTPA. In fact, several courts within the Eleventh Circuit have found that overages and unnoticed costs, such as those alleged in the Amended Complaint, qualify as actual damages for FDUTPA purposes. *See Allstate Ins. Co. v. Auto Glass Am., LLC*, 418 F. Supp. 3d 1009, 1023 (M.D. Fla. 2019) (Mendoza, J.) ("Plaintiffs have alleged actual damages in the amount of the alleged overages."); *Heckman v. SBE ENT Holdings, LLC*, 2019 WL 1468555, at *4 (S.D. Fla. Feb. 25, 2019) (Martinez, J.) ("[T]his Court finds that [p]laintiff has sufficiently alleged actual damages under FDUTPA at this juncture, namely, that [d]efendants allegedly charged him certain fees without proper notice, and in some cases, incorrect notice[.]"). For these reasons, we find that Asia Aviation has done enough to plead actual damages under FDUTPA.

---

(explaining that, under FDUTPA, actual damages "must be direct damages, not indirect and consequential damages").

## II. Purported Redundancy

*Second*, MDTR contends that the "FDUTPA claim must [ ] be dismissed because it['s] based on, and duplicative of, the breach of contract claim." Motion at 5. This argument is meritless.

"Florida law permits a FDUTPA claim to travel with a related breach of contract claim if the FDUTPA claim challenges the acts underlying or 'giving rise' to the breach, and does not 'rely solely on a violation of the Agreement as a basis for assertion of a FDUTPA claim.'" *Kenneth F. Hackett & Assocs., Inc. v. GE Cap. Info. Tech. Sols., Inc.*, 744 F. Supp. 2d 1305, 1312 (S.D. Fla. 2010) (Altonaga, J.) (quoting *Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F. Supp. 2d 1272, 1279 (M.D. Fla. 2008) (Antoon II, J.)).

Asia Aviation's FDUTPA claim alleges deceptive conduct beyond mere breach. Asia Aviation alleges that MDTR made numerous, repeated misrepresentations regarding: (1) the status of repairs, *see* Amended Complaint ¶¶ 23, 25; (2) supposed completion dates, *see id.* ¶ 26; (3) the location of Engine 2, *see id.* ¶ 24; (4) its possession of necessary parts, *see id.* ¶ 29; and (5) the types of repairs being made, *see id.* ¶¶ 30–31. Unlike the plaintiffs in *Rebman*, then, who relied "solely" on a contract violation to assert a FDUTPA claim, *Rebman*, 575 F. Supp. 2d at 1279, Asia Aviation has identified several examples of deceptive conduct—some of which extend beyond the mere breach of a promise.

## CONCLUSION

After careful review, therefore, we **ORDER** and **ADJUDGE** that the Motion [ECF No. 24] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on August 21, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record